UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>  vs.<br><br>OPHERRO JONES (03),<br><br>              Defendant. | CR NO. 13-00860-03 LEK |

**ORDER DENYING DEFENDANT'S: MOTION FOR IMMEDIATE RELEASE DUE TO CORONA VIRUS; AND MOTION FOR SENTENCE REDUCTION AND OR 18 U.S.C. § 3582(c)(1)(A)(i)**

Defendant Opherro Jones ("Jones"), proceeding *pro se*, seeks immediate release pursuant to the Second Chance Act of 2007, 18 U.S.C. § 3624(c)(1)(2).  [Def.'s Motion for Immediate Release Due to Corona Virus ("Motion"), filed 4/7/20 (dkt. no. 1287).]  Jones next filed his motion for sentence reduction.  [Def.'s Motion for Sentence Reduction and or 18 U.S.C. § 3582(c)(1)(A)(i) ("Motion for Sentence Reduction"), filed 4/17/20 (dkt. no. 1292).]  Plaintiff United States of America ("the Government") filed its response to both motions.  [Government's Opp. to Def.'s Motion for Immediate Release Due to Coronavirus ("Response"), filed 4/21/20 (dkt. no. 1293).[1]]  Jones

---

[1] The Government addresses both of Jones' requests for release pursuant to the Second Chance Act and 18 U.S.C. § 3582(c)(i)(A)(1).  <u>See</u> Response at 1 n.2.

filed his reply to the Response ("Reply") on May 4, 2020. [Dkt. no. 1299.] In addition, on April 28, 2020, Jones filed a document titled "Motion for Immediate Release Due to Corona Virus COVID-19." [Dkt. no. 1294.] Because it requests the same relief as the Motion and the Motion for Sentence Reduction, Jones's April 28, 2020 filing is HEREBY CONSTRUED as a supplement to those motions. The briefing schedule issued for the April 28, 2020 filing is therefore VACATED. See Minute Order, filed 4/29/20 (dkt. no. 1295).

For the reasons stated below, Jones' Motion and Motion for Sentence Reduction are both HEREBY DENIED.

## BACKGROUND

An eleven-count indictment was filed on September 12, 2013 against Jones and seventeen other defendants. [Dkt. no. 1.] Jones entered a guilty plea on March 28, 2014 to Count 1 which charged him with Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d). [Minutes, filed 3/28/14 (dkt. no. 243).] On May 27, 2015, the Court sentenced him to 110 months of imprisonment, to run consecutively to state sentences in Cr. No. 08-1-00263 and Cr. No. 07-1-1948, and three years of supervised release. [Minutes, filed 5/27/15 (dkt. no. 913), at 2.] Currently, Jones is "a 45 years old man, . . . housed at Coleman II, a high security U.S. Penitentiary [("USP")], located

in Sumterville, Florida, with a projected release date of August 25, 2023." See Response at 2.[2]

Jones contends that he should be released because he is at a higher risk for severe illness should he contract COVID-19 because he suffers from chronic lung disease and asthma for which he is prescribed medication which he takes through an inhaler. See Motion for Sentence Reduction at 1. He asks that he be allowed to serve his remaining term of imprisonment in home confinement or that his remaining term of imprisonment be converted to a period of probation, to be served in addition to his three years of supervised release. See id.

## DISCUSSION

### I. 18 U.S.C. § 3624

The Government correctly points out that courts do not have authority under 18 U.S.C. § 3624 to place inmates in community confinement facilities or home confinement during the final portion of their sentences. It is the Director of the Federal Bureau of Prisons ("BOP") who shall do so under specific conditions:

> (c) Prerelease custody.--
>
>   (1) In general.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of

---

[2] Jones states that he is "currently scheduled to be released Feb-2023 but with Second Chance Act Sept-2022." See Motion for Sentence Reduction at 1.

3

>
> imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2)  Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.
>
> (3)  Assistance.--The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.
>
> (4)  No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

18 U.S.C. § 3624(c)(1)-(4). Release from custody to home or community facility confinement is part of the federal sentence and not a release from imprisonment. See United States v. Earl, 729 F.3d 1064, 1068 (9th Cir. 2013) ("The BOP controlled the terms of his home confinement and, under 18 U.S.C. § 3624(c)(2), it had explicit authority to do so."). For this reason, the Motion is hereby DENIED.

4

## II. 18 U.S.C. § 3582(c)(1)(A)(i)

Generally, courts have limited power to modify terms of imprisonment after a defendant has been sentenced. See generally 18 U.S.C. § 3582. As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes an exception to that general rule and permits modification of a sentence:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that--
>
> > (1) in any case--
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction . . .
> > > >
> > > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

5

Thus, Jones is required to demonstrate both exhaustion of administrative remedies and that "extraordinary and compelling reasons" exist to warrant sentence reduction.

**A.    Exhaustion**

Section 3582(c)(1)(A) imposes "a statutory exhaustion requirement" that "must be 'strictly enforced.'"  United States v. Monzon, 99cr157 (DLC), 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (alteration omitted) (quoting Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)).  This requirement, however, may be waived:

> However, as courts in this Circuit have held, the requirement of completing the administrative process may be waived "if one of the recognized exceptions to exhaustion applies." United States v. Perez, No. 17-CR-513-3, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020); see also United States v. Colvin, No. 19-CR-179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) ("[I]n light of the urgency of [d]efendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [c]ourt waives the exhaustion requirement of Section 3582(c)(1)(A)."); United States v. Zukerman, No. 16-CR-194, 2020 WL 1659880, at *2 (S.D.N.Y. Apr. 3, 2020).

United States v. McCarthy, CRIM. CASE NO. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *3 (D. Conn. Apr. 8, 2020) (alterations in McCarthy).

The exhaustion requirement is therefore not absolute, but there must be a justification for waiving it:

> "Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019). There are generally three bases for waiver of an exhaustion requirement. See Perez, 2020 WL 1546422, at *2 (discussing exceptions to statutory exhaustion in context of motion for compassionate release during COVID-19 pandemic).
>
> "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." Washington, 925 F.3d at 118. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile." Id. at 120. Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief," including situations where "the relief the agency might provide could, because of undue delay, become inadequate." Id. at 119-20. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." Id. at 119.

Id. (alterations in McCarthy).

The Court finds that exhaustion would be futile under the current circumstances of the COVID-19 pandemic.

First, Jones has at least one risk factor for COVID-19, and the spread of COVID-19 in the United States - particularly in enclosed communities such as prisons and nursing homes - demonstrates that further delay may cause catastrophic health consequences, including death. See New York v. Sullivan, 906 F.2d 910, 918 (2d Cir. 1990) (holding that waiver was

7

appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even . . . death"). To be clear, the COVID-19 crisis is unique. It is not a matter of considering Jones's risk of getting sick and receiving less than adequate medical care, it is the consideration that, even with BOP's conscientiousness and care in mitigating the spread of COVID-19 in its facilities through cleaning and social distancing, it has been demonstrated that contracting COVID-19 has a high likelihood of causing severe illness.

  Second, the Court finds that the administrative process is incapable of granting adequate relief. Undue delay exists.

  Finally, the Court finds that Jones would be unduly prejudiced by delay since contracting COVID-19 would likely result in serious health consequences.

  The Court concludes that requiring Jones to exhaust administrative remedies under the circumstances presented renders exhaustion of the BOP administrative process futile, inadequate, and unduly prejudicial. As one court succinctly put it, "[a]lthough [his] original release date may be far off, the threat of COVID-19 is at his doorstep." Zukerman, 2020 WL 1659880, at *4. Thus, waiver of the exhaustion requirement is justified.

8

B.   **Extraordinary and Compelling Reasons**

A sentence reduction is only permitted where there are "extraordinary and compelling reasons," and if "such a reduction is consistent with applicable policy statement issued by the Sentencing Commission." § 3582(c)(1)(A)(i).

> Congress never defined the term "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 18 U.S.C. § 944(t) [sic]. Rather, Congress directed the Sentencing Commission to define the term. The Commission did so prior to the passage of the First Step Act, which amended section 3852(c)(1)(A) to allow prisoners to directly petition courts for compassionate release and removed the BOP's exclusive 'gatekeeper' role. See United States v. Rodriguez, No. 2:03-cr-00271, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020).

McCarthy, 2020 WL 1698732, at *4 (some alterations in McCarthy).

The Sentencing Commission does indeed provide, in pertinent part, the requisite guidance:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent . . . applicable, the court determines that–
>
> > (1)(A) extraordinary and compelling reasons warrant the reduction; . . .
> >
> > (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

> (3) the reduction is consistent with this policy statement.

United States Sentencing Commission Guidelines Manual ("U.S.S.G.") § 1B1.13. The Commission defined "extraordinary and compelling" with three specific qualifying reasons in the Application Notes to section 1B1.13. The one applicable here is:

> (A) Medical Condition of the Defendant.
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy . . . is not required. . . .
>
> (ii) The defendant is-
>
> > (I) suffering from a serious physical or medical condition . . .
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1.

Courts have found that an extraordinary and compelling reason exists under certain situations:

> The defendant's age and medical condition, taken in concert taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce McCarthy's sentence. See United States v. Gonzalez, No. 18-CR-1536155, 2020 WL 1536155, at *3 [(E.D. Wash. Mar. 31, 2020)] (approving compassionate release where defendant "is in the most susceptible age category (over 60 years of age) and her COPD and

>   emphysema make her particularly vulnerable"); United States v. Hernandez, No. 18-CR-834, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (finding "extraordinary and compelling reasons" to reduce the defendant's sentence due to defendant's asthma and the "heightened medical risk presented to [the defendant] by the COVID-19 pandemic"); Rodriguez, 2020 WL 1627331, at *2 (granting compassionate release because for a diabetic inmate, "nothing could be more extraordinary and compelling than this pandemic"); United States v. Campagna, No. 16-CR-78-01, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to [sic] Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC."); Perez, 2020 WL 1546422, at *2 ("Perez meets th[e] requirement [of Application Note 1(D)] as well, because he has weeks left on his sentence, is in weakened health, and faces the threat of a potentially fatal virus.  The benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave."); see also United States v. Perez, No. 19-CR-297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application, pursuant to section 3142(i), of 65-year-old defendant with COPD, in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19").

McCarthy, 2020 WL 1698732, at *5 (some alterations in McCarthy).

Those at high risk for severe illness from COVID-19 are: people sixty-five years old or older; people living in a nursing home or long-term care facility; and people of all ages

11

with underlying medical conditions, including chronic lung disease, serious heart conditions, diabetes, chronic kidney disease undergoing dialysis, liver disease, or who are immunocompromised.  Centers for Disease Control and Prevention ("CDC"), Coronavirus Disease 2019, People Who Are At Higher Risk, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 5, 2020).

Based on the CDC criteria, Jones has not demonstrated extraordinary and compelling reasons justifying his release under section 3582(c)(1)(A) and section 1B1.13 of the Sentencing Guidelines.  He is not sixty-five years old or older and, while he is a male, does have a documented condition of asthma for which he takes medication and is in prison where he must live in close quarters similar to a nursing home, he does not suffer from serious underlying medical conditions such as hypertension, diabetes, liver disease or kidney failure which can substantially increase risk of intensive care unit admission and death if he contracts COVID-19.

The Court recognizes that the vulnerability and fear caused by the stress of the COVID-19 pandemic is particularly felt by those, like Jones, who are in prison.  In addition, COVID-19 is already within BOP's walls.  The BOP itself reports

the current status of its positive COVID-19 cases, including deaths, is:

> The BOP has **140,369** federal inmates in BOP-managed institutions and **11,161** in community-based facilities.  The BOP staff complement is approximately **36,000**.  There are **2646 federal inmates** and **244 BOP staff** who have confirmed positive test results for COVID-19 nationwide.  Currently, **591** inmates and **278** staff have recovered.  There have been **44** federal inmate deaths and **0** BOP staff member deaths attributed to COVID-19 disease.

Federal Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus (last visited May 7, 2020) (emphases in original).  Coleman II, where Jones is housed, does not currently have any inmates or staff who are positive for COVID-19.[3]  Id.

### C. Other Considerations

The Court has concluded that an extraordinary and compelling reason does not exist, and thus it need not address the two other determinations for granting reduction of imprisonment.

---

[3] BOP reports that the ten institutions that currently have the most positive COVID-19 infections among inmates are: Terminal Island Federal Correctional Institution ("FCI"), Lompoc FCI, Fort Worth Federal Medical Center ("FMC"), Butner Medium I FCI, Forrest City Low FCI, Chicago Metropolitan Correctional Center ("MCC"), Elkton FCI, Lexington FMC, Yazoo City Low FCI, and Oakdale I FCI.  Federal Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus (last visited May 7, 2020).

**CONCLUSION**

For the foregoing reasons, Jones's Motion for Immediate Release Due to Corona Virus, filed April 7, 2020, and Jones's Motion for Sentence Reduction and or 18 U.S.C. § 3582(c)(1)(A)(i), filed April 17, 2020, are both HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, May 11, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

USA VS. OPHERRO JONES; CR 13-00860-03 LEK; ORDER DENYING DEENDANT'S:  MOTION FOR IMMEDIATE RELEASE DUE TO CORONA VIRUS; AND MOTION FOR SENTENCE REDUCTION AND OR 18 U.S.C. § 3582(c)(1)(A)(i)